[No. 24112. Department One. April 17, 1933.]

ELMER H. TIGNER, *Respondent*, v. WILLIAM ZOSEL, *Appellant*.[1]

*Patterson & Davis,* for appellant.

*Wilson C. Gresham,* for respondent.

MITCHELL, J.—Defendant, William Zosel, owns and operates a sawmill at Oroville, Washington, a few miles south of the boundary line between the United States and Canada. He owned or controlled the timber on what is known as the Porter tract on the Cana-

[1]Reported in 21 P. (2d) 239.

dian side. In April, 1929, he entered into an oral contract with the plaintiff, Elmer H. Tigner, to cut timber on the tract and deliver the logs at the sawmill. Tigner partly performed the contract, and in May, 1930, brought this action in damages for breach of the contract by Zosel. The trial resulted in a verdict and judgment for plaintiff. The defendant has appealed.

The first contention on behalf of appellant is that, by the terms of the contract, the timber was not to be removed except as needed, over a period of several years, and the contract, being oral, was invalid under Rem. Rev. Stat., § 5825, which provides, among other things, that any agreement shall be void unless it, or some note or memorandum thereof, be in writing, where the agreement ''by its terms is not to be performed in one year from the making thereof;'' and, the contract being void, there can be no recovery in this case on account of an alleged breach of it.

The appellant introduced substantial evidence in support of the allegation in his answer that the contract was one of that kind. On the contrary, the respondent introduced substantial evidence that, while there was no definite knowledge of the quantity of sawlogs on the tract, it was supposed to amount to from seven to ten million feet, but that, by the terms of the oral contract made in April, 1929, he agreed only to deliver six million feet, which were to be delivered within one year. Upon this subject, he further testified:

''Q. And then you were to put in the other 4,000,000 commencing April, 1930, and running on until you got them in? A. Nothing was said at that time. Q. That was what you expected to do, was it not? A. No, I didn't have any expectation beyond the 6,000,000. Q. You don't know when you were to put in the other 4,000,000? A. There was no agreement to put them in.''

■ Appellant complains, and assigns as error, that there was a fatal variance between respondent's pleading and proof. Respondent's proof of the terms of the oral contract, as above set out, was introduced without any objection on the part of the appellant, thus making applicable the rule set out in *Van Vliet v. Washington Nursery Co.*, 167 Wash. 115, 8 P. (2d) 961, as follows:

"If there were a variance between the pleading and the proof, the appellants are in no position to now complain, as they did not object to the testimony when it was introduced. We would under such circumstances consider the pleading amended to conform to the proof. *Hahn v. Brickell*, 131 Wash. 212, 229 Pac. 739; *O'Neill v. Matthews*, 126 Wash. 360, 218 Pac. 222; *McGuirk v. Gazzam*, 150 Wash. 554, 274 Pac. 176."

The dispute between the parties as to the terms of the contract was, of course, for the jury to decide.

■ The second contention on behalf of appellant is that the respondent was not entitled to recover any damages. Respondent's evidence substantially tended to show that, about the middle of July, 1929, appellant ordered him to stop hauling logs, and that, as respondent testified, about two months later

"I came back and asked Mr. Zosel if we could start logging again, and he said he had not financed himself for that fall, and that he didn't have the money to start logging, so he hired me to work in the mill."

The testimony further shows that the respondent was able and ready to deliver the six million feet during the year; that he did deliver a substantial quantity before he was ordered to quit; and that the balance of the six million feet, at the profit his contract provided, would have paid in excess of the amount the jury allowed.

The third and last assignment refers to the matter of instructions to the jury.

(1) The appellant's version of the contract was that, on account of weather conditions, among other things, his sawmill would not cut as much as six million feet a year, and along that line the court instructed the jury, in effect, that, in deciding the case, they might take into consideration the rule or custom of operating a mill of the kind in question in that part of the country. This instruction was given, as we understand, in connection with appellant's testimony introduced to explain the terms of the contract, and, in effect, was nothing more than suggesting that the jury might consider normal seasonal weather conditions in the locality; and just as appellant says in his brief, in discussing his evidence:

"We are thus forced to turn to the surrounding circumstances to determine whether or not the parties contemplated that the contract would necessarily extend over a period in excess of one year."

It appears to us that the instruction complained of was intended for the benefit of him who now complains, and certainly we cannot see anything about it that was prejudicial or calculated to mislead the jury.

(2) The second complaint with respect to the subject of instructions is that the court *failed* to instruct the jury that they should offset certain damages alleged on behalf of the appellant. The appellant did not request any such instruction; and besides, whether or not the jury took such damages into consideration, the trial court did and reduced the amount of the verdict accordingly, so that the judgment, as finally entered, takes into consideration and allows the damages referred to by the appellant, although respondent has taken no cross-appeal.

Judgment affirmed.

BEALS, C. J., HOLCOMB, and MILLARD, JJ., concur.